IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

---

AMBAC ASSURANCE CORPORATION,

                Plaintiff,

v.                                                                            Case No. 15-cv-9596-DDC-JPO

FORT LEAVENWORTH FRONTIER
HERITAGE COMMUNITIES, II, LLC,

                Defendant.

---

### MEMORANDUM AND ORDER

Plaintiff Ambac Assurance Corporation filed this breach of contract action against defendant Fort Leavenworth Frontier Heritage Communities, II, LLC.  Plaintiff alleges that defendant has breached a provision of a Servicing and Lockbox Agreement ("Servicing Agreement") to which both plaintiff and defendant are parties.  Plaintiff seeks specific performance of that provision and an award of "enforcement damages," which, plaintiff contends, the Servicing Agreement requires.  This matter comes before the court on defendant's "Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(7)" (Doc. 7).

Defendant contends that plaintiff has failed to join an indispensable party under Fed. R. Civ. P. 19.  Defendant argues that the court must dismiss plaintiff's Complaint because joinder of the indispensable party would destroy diversity jurisdiction.  Defendant also asserts that plaintiff has not pleaded the diversity of the existing parties adequately.  Plaintiff has responded (Doc. 13) and defendant has filed a reply (Doc. 15).  For reasons explained below, the court denies defendant's motion.

1

I. **Factual Background**

   A. **The Fort Leavenworth Project**

In 2006, the Secretary of the Army engaged "a private construction, development[,] and property management company" ("Developer") to help it rehabilitate, construct, and manage on-base housing at Fort Leavenworth (the "Project").[1] Doc. 8 at 3. The Secretary of the Army and the Developer organized the Project by forming two limited liability companies, Fort Leavenworth Frontier Heritage Communities, LLC ("Sublessor") and defendant. The Secretary of the Army owns a 49 percent interest in Sublessor. And Fort Leavenworth-Michaels JV, LLC, a private entity formed by the Developer, owns the remaining 51 percent. Defendant is owned entirely by Fort Leavenworth-Michaels Private, LLC—another entity formed by the Developer. A separate corporation, Leavenworth SPE, Inc., is a member of both Sublessor and defendant, but it owns no interest in either company. Defendant's motion contends that Sublessor is an indispensable party to this lawsuit.

Defendant's operating agreement (Doc. 15-4) grants Sublessor authority to review and approve the Project's annual operating and capital budgets. Specifically, Section 7.13 of the operating agreement, as relevant here, provides:

> No later than Closing . . . and not less than sixty (60) days prior to the commencement of each subsequent fiscal year, [defendant's] Managing Member shall submit to Sublessor for its review and approval, proposed operating and capital budgets for the Project and the Company in detail for the next fiscal year (collectively, the "Budget"). Each such Budget . . . shall specifically list all budgeted revenue and expense line items and be organized in major categories including, but not limited to, administration, operation, . . . amounts anticipated to be advanced or required under the Sublessee Loan, [and] debt service with respect to the Loans and the Sublessee Loan . . . . Each such Budget shall be accompanied by the certification of the Managing Member as to the adequacy of the provision made for operations, . . . and deposits to the accounts maintained pursuant to the [Servicing] Agreement, in light of the ongoing and long-term needs of the Project. Upon receipt of the proposed Budget, Sublessor shall have

---

[1] The parties never identify the developer selected by the Secretary of the Army.

> 60 days to review, conduct discussions, and communicate any objections with respect to, the proposed Budget. . . . Until such time as Sublessor has agreed to the proposed Budget for any fiscal year, the Managing Member will continue to operate the Company and administer the Project in accordance with the approved Budget for the immediately preceding fiscal year, provided that the operating budget incorporated within such Budget shall be adjusted by the CPI for such preceding year.  Subject to the [Servicing] Agreement, the Managing Member shall be authorized to permit the Asset Manager to pay all necessary expenses for operation of the Project, even if such expenses exceed the amounts anticipated for particular items in the Budget, if such expenditures . . . (ii) are required to avoid suspension of any necessary service to the Project or (iii) are needed to meet the requirements and procedures for Project management and maintenance, as set forth in the Ground Lease.

*Id*. at 38-39.  The Sublessor is a signatory to defendant's operating agreement, but "as to the provision of Section 7.13 only." *Id*. at 62.

The Sublessor leased land for the Project directly from the Army.  In turn, Sublessor subleased that land to defendant on March 1, 2006.  *See* Doc. 15-5.

### B.  Financing the Project

On March 1, 2006, defendant financed the Project by obtaining a loan from GMAC Commercial Holding Capital Corp. (the "Lender").  Defendant and the Lender memorialized the general terms of this transaction in a Loan Agreement (Doc. 8-3), in which defendant agreed to repay the Lender, as set out in two promissory notes.

That same day, the Lender and U.S. Bank executed a Grantor Trust Agreement (Doc. 1-2), creating the GMAC Commercial Military Housing Trust (the "Trust").  Under the terms of the Grantor Trust Agreement, the Lender assigned all of its rights, title, and interest in the loan to the Trust and U.S. Bank, acting as "Grantor Trustee."  In turn, the Trust issued certificates entitling holders to a portion of each loan payment.  The Trust Agreement also gives the Project's "Credit Enhancer" an interest in the Trust, stating:  "the Credit Enhancer has been

granted certain rights under the Credit Enhancement Agreement which are hereby incorporated herein by reference." *Id*. at 60.

The Credit Enhancement Agreement (Doc. 1-3) identifies plaintiff as the "Credit Enhancer." In that position, plaintiff issued a Financial Guaranty Insurance Policy (Doc. 1-4), assuring payment of all principal and interest due on the loan, should defendant fail to make a scheduled payment. In exchange, defendant, the Lender, and the Grantor Trustee, assigned plaintiff all rights of the Lender under the Loan Agreement, Grantor Trust Agreement, the Servicing Agreement, and all other loan documents (collectively, the "Loan Documents"). Specifically, as relevant here, the Credit Enhancement Agreement provides:

> (o)   So long as the Obligations have not been paid in full in accordance with the Loan Documents:
>
> > (i)   The Credit Enhancer shall be deemed the Lender, and the Owner of 100% of the Certificates, for purposes of exercising rights, instituting any action or granting or withholding any consent permitted by or required of the Lender or the Owners under the Transaction Documents . . . .

Doc. 1-3 at 8.[2] Thus, plaintiff assumed all rights of the Lender and Grantor Trustee to enforce the Loan Documents and to receive all principal and interest paid on the loan.

**C. The Servicing Agreement**

Also on March 1, 2006, defendant, the Lender, Sublessor (referred to as the "Ground Lessee"), Ambac Financial Services, LLC, and GMAC Commercial Mortgage Corporation executed the Servicing Agreement (Doc. 8-2), governing the deposit and disbursement of loan proceeds. Sections 4.04(b)(x) and 4.09 of the Servicing Agreement require defendant to maintain a "Loan Reserve Account" in an amount equal to the loan's maximum annual debt service. *Id*. at 30, 34. The Servicing Agreement permits defendant to fund the Loan Reserve

---

[2]   The Credit Enhancement Agreement defines the term "Transaction Documents" to include the Loan Documents. Doc. 1-3 at 6.

Account with cash or by obtaining a Reserve Account Contract—*i.e.*, "a surety bond, insurance policy, letter of credit, investment agreement, investment contract[,] or similar instrument which provides for payment on demand, in form and substance reasonably satisfactory to the Servicer . . . ." *Id*. at 38.

If defendant elects to fund the Loan Reserve Account with a Reserve Account Contract, Section 4.15 of the Servicing Agreement requires it be an instrument "issued by an obligor . . . whose obligations under the Reserve Account Contract are (i) rated 'AA' by S&P or 'Aa2' by Moody's, and (ii) not on a credit watch for a downgrading." *Id*. And, if the credit rating of the issuer falls below AA or Aa2, Section 4.15 provides that defendant must, "at its option, within 10 Business Days after notice from the Lender or Servicer, either cause a replacement Reserve Account Contract to be issued by an issuer . . . which has such required debt rating or replace such Reserve Account Contract with immediately available funds in the requisite amount . . . ." *Id*.

Defendant purchased a Surety Bond (Doc. 8-5) from plaintiff on March 1, 2006, to fund the Loan Reserve Account. At that time, plaintiff's credit rating met the requirements of the Servicing Agreement. But, in 2008, plaintiff's financial condition began to deteriorate. And on June 19, 2008, Moody's downgraded plaintiff's credit rating from Aa2 to Aa3. Similarly, on November 19, 2008, S&P downgraded plaintiff's rating from AA to A. Plaintiff's financial condition continued to sour, causing S&P to withdraw plaintiff's credit rating on November 30, 2010. Moody's followed suit, withdrawing plaintiff's rating on April 7, 2011.

Four years later, on October 6, 2015, the Grantor Trustee sent defendant a letter, informing it that plaintiff no longer maintained a credit rating satisfying Section 4.15 of the Servicing Agreement. *See* Doc. 1-8. The Grantor Trustee notified defendant that the Servicing

Agreement required it to replace plaintiff's Surety Bond with either: (1) a Loan Reserve Contract from a financial institution carrying an adequate credit rating; or (2) "immediately available funds in the amount of $14,547,000." *Id.* Defendant has not replaced plaintiff's Surety Bond. Nor has it funded the Loan Reserve Account with cash. Plaintiff thus filed this action, seeking to compel specific performance of Section 4.15 of the Servicing Agreement. Plaintiff also asks the court to award it enforcement expenses and attorneys' fees. Defendant moves to dismiss plaintiff's Complaint for failure to join an indispensable party that, if joined, would destroy diversity jurisdiction.

## II.  Legal Standard

Fed. R. Civ. P. 12(b)(7) permits a district court to dismiss a case if a plaintiff has failed to join a necessary and indispensable party, as Fed. R. Civ. P. 19 requires. As the proponent of a Rule 12(b)(7) motion, defendant "has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994). Defendant can meet this burden with "'affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence.'" *Id.* (quoting *Martin v. Local 147, Int'l Bhd. of Painters*, 775 F. Supp. 235, 236 (N.D. Ill. 1991)). A federal district court exercises its discretion when deciding whether to grant a motion to dismiss under Rule 12(b)(7). *Id.*

A court applies a three-step analysis when deciding whether to dismiss a case for failing to join a party under Rule 19. First, it must determine "whether the party is necessary to the suit and must therefore be joined if joinder is feasible." *Rishell v. Jane Phillips Episcopal Mem'l Med. Ctr.*, 94 F.3d 1407, 1411 (10th Cir. 1996). A person is "necessary" in this sense if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Second, if it determines that the absent person is necessary, the court then considers whether joinder is feasible—*i.e.*, whether the person is subject to service of process and whether joinder will deprive the court of subject matter jurisdiction. *Id*.

Last, if the absent person is necessary, but joinder is not feasible, the court must decide whether that person is indispensable. *Rishell*, 94 F.3d at 1411. "[T]o conclude that a party is indispensable, the Court must find 'in equity and good conscience' that the action should not proceed in the party's absence." *Kansas City Royalty Co., L.L.C. v. Thoroughbred Assocs., L.L.C.*, 215 F.R.D. 628, 630 (D. Kan. 2003) (quoting Fed. R. Civ. P. 19(b)). When deciding whether it may proceed without a necessary party, a federal court weighs the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
>> (A) protective provisions in the judgment;
>>
>> (B) shaping the relief; or
>>
>> (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). "Because Rule 19(b) does not state the weight to be given each factor, the district court in its discretion must determine the importance of each in the context of the particular case." *Thunder Basin Coal Co. v. Sw. Pub. Serv. Co.*, 104 F.3d 1205, 1211 (10th Cir. 1997) (citing *Glenny v. Am. Metal Climax, Inc.*, 494 F.2d 651, 653 (10th Cir. 1974)).

### III. Analysis

Defendant here contends that the court must dismiss plaintiff's claims for two, independent reasons. First, defendant asserts that Sublessor is an indispensable party under Rule 19 and plaintiff failed to join that entity. Defendant argues that the court must grant its motion to dismiss because the Secretary of the Army—a stateless arm of the federal government—is a member of Sublessor and, thus, its joinder would destroy diversity jurisdiction. Second, defendant contends that dismissal is also appropriate because plaintiff has not pleaded diversity among the existing parties adequately. The court addresses each of defendant's theories, in turn, below.

#### A. Failure to Join an Indispensable Party

The court begins with defendant's first argument—that Sublessor is an indispensable party to this suit.

##### 1. The Sublessor is a Necessary Party.

Before it can determine whether Sublessor is an indispensable party under Rule 19(b), the court must decide first whether Sublessor is a necessary party under Rule 19(a). Defendant contends that it is necessary under both Rule 19(a)(1)(A) and Rule 19(a)(1)(B)(i).

###### i. Rule 19(a)(1)(A)

Defendant asserts that Sublessor is a necessary party under Rule 19(a)(1)(A)—*i.e.*, in Sublessor's absence, the court cannot accord complete relief among the existing parties. Specifically, defendant asserts that Sublessor's control of the Project's annual budget precludes

8

the court from granting complete relief.  Defendant also asserts that Section 7.13 of its operating agreement grants Sublessor complete control over the financial aspects of the Project and thus requires defendant to procure Sublessor's consent before making "any extraordinary expenditures (such as prefunding the debt reserve account)." Doc. 8 at 6.  Defendant contends that Sublessor is necessary because "in order for any ruling of this court requiring prepayment of the debt reserve account to be effective, it must be binding on both [defendant] and . . . Sublessor; this is why . . . Sublessor is a signatory to both [defendant's] operating agreement and the Servicing Agreement." *Id.* (citing Fed. R. Civ. P. 19(a)(1)(A); *Ward v. Deavers*, 203 F.2d 72, 75 (D.C. Cir. 1953)) (emphasis omitted).

Plaintiff counters this argument, contending that Sublessor is not necessary to this suit because the Servicing Agreement only obligates defendant to maintain the Loan Reserve Account.  Plaintiff argues that defendant has failed to demonstrate how Sublessor's control of the Project's annual budget prevents the court from according complete relief between the current parties.  Plaintiff also asserts that Sublessor is not a necessary party by virtue of its signature on defendant's operating agreement or the Servicing Agreement.

The court agrees that it can fashion complete relief among the existing parties without joining Sublessor.  In its Complaint, plaintiff seeks an order compelling defendant to replace a Reserve Account Contract which, plaintiff contends, no longer carries the minimum credit rating the Servicing Agreement requires.  Defendant, as the "Borrower," is the only entity responsible to maintain such a contract or fund the Loan Reserve Account with cash.  Indeed, Section 4.15 of the Servicing Agreement provides expressly:

> If at any time any issuer of a Reserve Account Contract shall no longer have such required debt rating, *the Borrower* shall, at its option, within 10 Business Days after notice from the Lender or Servicer, either cause a replacement Reserve Account Contract to be issued by an issuer . . . which has such required debt

9

>rating or replace such Reserve Account Contract with immediately available funds in the requisite amount . . . .

Doc. 8-2 at 38 (emphasis added). This provision never references Sublessor or any other term of defendant's operating agreement. Nor does this provision condition defendant's maintenance of the Loan Reserve Account on Sublessor's consent. Instead, the plain language of the Servicing Agreement demonstrates that defendant, as Borrower, is the only party obligated under Section 4.15.

Defendant has failed to demonstrate that Sublessor's control over the Project's annual budget precludes the court from fashioning complete relief.[3] Plaintiff seeks to enforce a contractual obligation that only the defendant owes under the Servicing Agreement. Any organizational link between defendant and Sublessor that might hinder defendant's ability to meet this obligation is beyond the scope of plaintiff's claims and the court's adjudication of them. To put it simply, if plaintiff prevails and Sublessor prevents defendant from complying with an order of specific performance, such conduct might give rise to a separate cause of action between defendant and Sublessor. But it does not deprive the court of an ability to afford relief among the existing parties.

Also, that Sublessor is a signatory to defendant's operating agreement and the Servicing Agreement does not, by itself, make Sublessor a necessary party under Rule 19(a). Typically, all

---

[3] While defendant contends that it cannot make large expenditures without Sublessor's consent, its operating agreement suggests otherwise. For example, Section 7.13 sets out Sublessor's budget approval power. But it also permits defendant to expend Project funds to cover certain, unanticipated expenses without Sublessor's approval:

>Subject to the [Servicing] Agreement, [defendant's] Managing Member shall be authorized to permit the Asset Manager to pay all necessary expenses for operation of the Project, even if such expenses exceed the amounts anticipated for particular items in the Budget, if such expenditures . . . (ii) are required to avoid suspension of any necessary service to the Project or (iii) are needed to meet the requirements and procedures for Project management and maintenance, as set forth in the Ground Lease.

Doc. 15-4 at 39.

parties to a contract are necessary in cases "seeking reformation, cancellation, rescission, or otherwise challenging the validity of a contract." 7 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1613 (3d ed. 2016); *see also Ward v. Deavers*, 203 F.2d 72, 75 (D.C. Cir. 1953) (requiring joinder of all parties in actions for "[r]escission of a contract, or declaration of its invalidity"). This makes perfect sense because cases of this nature affect the rights and obligations of all parties to the contested contract. *See Ward*, 203 F.2d at 75 (holding that a party to a contract was indispensable "because a final decree rescinding the agreement could hardly be made without affecting his interest"). But no similar rule requires joinder of every contracting party in contract cases where one party allegedly has breached a duty it owes another party. *See, e.g.*, *Rhone-Poulenc Inc. v. Int'l Ins. Co.*, 71 F.3d 1299, 1301 (7th Cir. 1995) ("A victim of wrongdoing is not generally required to sue all wrongdoers. Certainly not in a tort case, where the rule of joint and several liability reigns; and not in a contract case either."); *Babb v. Mid-Am. Auto Exch., Inc.*, No. 06-2230-CM, 2006 WL 2714273, at *2 (D. Kan. Sept. 22, 2006) ("[A] defendant's potential right to contribution or indemnification from an absentee does not make the absentee necessary under Rule 19."); *Freeman v. Liu*, 112 F.R.D. 35, 41 (N.D. Ill. 1986) ("Potential indemnitors have never been considered indispensable parties or even parties whose joinder is required if feasible. . . . Similarly, joint obligors to a contract are generally not considered indispensable, since their liability is usually joint and several.").

Plaintiff here does not ask the court to reform, cancel, rescind, or invalidate any provision of the Servicing Agreement. Nor are defendant and Sublessor joint obligors under Section 4.15. Instead, defendant is the only party obligated by this provision to maintain the Loan Reserve Account. So, if plaintiff prevails, an order of specific performance requiring defendant to comply with Section 4.15 of the Servicing Agreement would constitute complete relief among

the existing parties. The court thus concludes that Sublessor is not a necessary party under Rule 19(a)(1)(A).

### ii.     Rule 19(a)(1)(B)(i)

Defendant also contends that Sublessor is a necessary party under Rule 19(a)(1)(B)(i)—*i.e.*, it claims an interest relating to the subject of this action such that disposing of the action in its absence, as a practical matter, may impair or impede its ability to protect that interest. Defendant asserts that an order requiring defendant to replace the Loan Reserve Contract "would have an enormous practical effect on the budget of the [d]efendant, directly impinging on the Sublessor's budget approval right." Doc. 15 at 10. Defendant raises this argument for the first time in its Reply. Generally, our court will not address arguments raised in a reply brief. *See, e.g.*, *Liebau v. Columbia Cas. Co.*, 176 F. Supp. 2d 1236, 1244 (D. Kan. 2001) ("Courts in this district generally refuse to consider issues raised for the first time in a reply brief."); *Glad v. Thomas Cty. Nat'l Bank*, No. 87-1299-C, 1990 WL 171068, at *2 (D. Kan. Oct. 10, 1990) (declining to consider new arguments in reply brief "since the [opposing party] has not had an opportunity to respond"). But, because defendant's argument pertains to subject matter jurisdiction, the court addresses it.

"'Rule 19, by its plain language, does not require the absent party to actually *possess* an interest; it only requires the movant to show that the absent party *claims an interest* relating to the subject of the action.'" *Citizen Potawatomi Nation v. Norton*, 248 F.3d 993, 998 (10th Cir. 2001) (quoting *Davis v. United States*, 192 F.3d 951, 958 (10th Cir. 1999) (emphasis in original) (further quotation omitted)). As a result, Rule 19(a)(1)(B) "excludes only 'those *claimed* interests that are patently frivolous.'" *Id.* (quoting *Davis*, 192 F.3d at 959 (emphasis in original)). The court cannot say here that Sublessor's claimed interest is "patently frivolous" or

12

unrelated to the action. Indeed, if plaintiff prevails and the court orders defendant to replace the Reserve Account Contract, such an order may impair Sublessor's ability to control the Project's budget. The court thus concludes that Sublessor is a necessary party under the standard adopted by Rule 19(a)(1)(B)(i).

### 2. Joinder of Sublessor is not feasible.

Joinder of an absent person is feasible if that person is subject to service of process and its addition will not deprive the court of subject matter jurisdiction. Fed. R. Civ. P. 19(a)(1). The court concludes that joining Sublessor is not feasible here.

The Secretary of the Army is a member and part owner of Sublessor. It is well established that the federal government, its agencies, and instrumentalities are not, for federal jurisdictional purposes, considered citizens of any state. *See* 10 U.S.C. § 3011 ("The Department of the Army is separately organized under the Secretary of the Army. It operates under the authority, direction, and control of the Secretary of Defense."); *Commercial Union Ins. Co. v. United States*, 999 F.2d 581, 584 (D.C. Cir. 1993) ("[T]he United States is not a citizen for diversity purposes and . . . 'U.S. agencies cannot be sued in diversity.'" (quoting *Gen. Ry. Signal Corp. v. Corcoran*, 921 F.2d 700, 703 (7th Cir. 1991)). Thus, when the Secretary of the Army is a member of an LLC, diversity jurisdiction does not exist. *See Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1234 (10th Cir. 2015) ("[A]n unincorporated association[] takes the citizenship of all of its members.").

But plaintiff contends that an exception applies here that permits joinder of Sublessor without depriving the court of diversity jurisdiction. Specifically, plaintiff asserts that a stateless entity may join a diversity case if it is only a nominal party. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980) ("[A] federal court must disregard nominal or formal parties and rest

jurisdiction only upon the citizenship of real parties to the controversy."). Courts typically apply this exception when deciding whether to remand for lack of diversity a case removed from state court. In those cases, courts consider a nominal party to be one without a real interest in or control over the lawsuit. *See, e.g.*, *Mortenson Family Dental Ctr., Inc. v. Heartland Dental Care, Inc.*, 526 F. App'x 506, 508-09 (6th Cir. 2013) ("[A] nominal party has no interest in the result of the suit and need not be made a party."); *Okla. ex rel. Williams v. Okla. Natural Gas Corp.*, 83 F.2d 986, 988 (10th Cir. 1936) (describing a nominal party as one "without any substantial interest in the controversy"); *see also Fisher v. Dakota Cmty. Bank*, 405 F. Supp. 2d 1089, 1095 (D.N.D. 2005) ("[M]ost lower federal courts have limited the 'exception' for formal or nominal party defendants to situations in which it is clear that the defendant is not a necessary or an indispensable [party] as a matter of law, the party has nothing at stake in the litigation, and no real, present claim for relief is being sought against the party.").

Here, the court has determined that Sublessor claims an interest in the action sufficient to qualify it as a necessary party under Rule 19(a). Thus, if joined, Sublessor's participation would not merely be that of a nominal party. The court rejects plaintiff's argument on this point and next turns to the question whether Sublessor is indispensable under Rule 19(b).

### 3. Sublessor is not an Indispensable Party.

Because Sublessor is a necessary party and cannot be joined, the court must determine "whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). To make this determination, the court considers the following factors:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:

14

>>(A) protective provisions in the judgment;
>>
>>(B) shaping the relief; or
>>
>>(C) other measures;
>
>(3) whether a judgment rendered in the person's absence would be adequate; and
>
>(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.*

First, the court considers the extent to which a judgment in Sublessor's absence might prejudice it or the existing parties. Sublessor claims an interest under defendant's operating agreement, which entitles it to review, approve, and, thus, control the Project's annual budget. But this interest is not unrepresented. Indeed, Sublessor's interest aligns with defendant's interest in opposing the relief that plaintiff requests. Defendant contests the allegation that it must replace the Reserve Account Contract or expend cash to fund the Loan Reserve Account, contending that plaintiff's "claims are meritless," Doc. 8 at 5, and the "breach at issue is the result of [plaintiff's] own failure to maintain its credit rating." *Id.* at 2. Defendant and Sublessor thus share a common motive to refute plaintiff's claims. This shared interest reduces the potential prejudice to Sublessor that might result from a judgment in its absence. *See Sac & Fox Nation of Mo. v. Norton*, 240 F.3d 1250, 1259 (10th Cir. 2001) (holding that an absent party was not necessary or indispensable where the defendant's interest was "[a]s a practical matter, . . . 'virtually identical' to the interests" of the absent party). A judgment in Sublessor's absence also is unlikely to prejudice the existing parties. This factor thus militates against dismissal.

Second, the court concludes that it could not lessen or avoid any potential prejudice to Sublessor (or existing parties) by including protective provisions in a judgment, or by shaping any relief granted. As a result, the second factor favors dismissal.

Third, the court must determine whether a judgment rendered in Sublessor's absence would be adequate. As discussed above, defendant is the only party that Section 4.15 of the Servicing Agreement requires to maintain the Loan Reserve Account. Also, defendant has failed to demonstrate that Sublessor's budget approval power precludes the court from granting complete relief among the existing parties. The court thus finds that it can render a judgment affording complete and adequate relief without joining Sublessor. This factor weighs against dismissal.

Fourth, the court considers whether plaintiff would have an adequate remedy if this action were dismissed because Sublessor is not joined. Here, no dispute exists. Plaintiff could file an identical action in a state court of general jurisdiction. There, it is probable that subject matter jurisdiction would exist over claims asserted against both the defendant and Sublessor. Indeed, defendant notes that plaintiff has filed five lawsuits involving similar issues at other military bases in state courts across the country. *See* Doc. 15 at 2-3. The fourth factor thus favors dismissal.

Applying these factors, the court concludes that this action can proceed, "in equity and good conscience" without joinder of Sublessor. While plaintiff could have filed suit against both defendant and Sublessor in state court, the common interest between defendant and Sublessor reduces any prejudice that might result from Sublessor's absence. And, importantly, the court can grant complete and adequate relief between the existing parties without joining Sublessor. Defendant thus has failed to meet its burden to show that Sublessor is an indispensable party under Rule 19. The court therefore denies defendant's request to dismiss this action under Rule 12(b)(7).

### B. Failure to Plead Diversity of Limited Liability Companies

Defendant's motion to dismiss alternatively contends that dismissal is appropriate because plaintiff's Complaint fails to plead the diversity of all members of defendant—a limited liability company— adequately. In our Circuit, "an LLC, as an unincorporated association, takes the citizenship of all its members." *Siloam Springs Hotel, L.L.C.*, 781 F.3d at 1234. Thus, when "determining the citizenship of an unincorporated association [such as an LLC] for purposes of diversity, federal courts must include all the entities' members." *Id*. at 1237-38 (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990)); *see also Cosgrove v. KKR Legends, LLC*, No. 15-2476-JWL, 2015 WL 1426327, at *1 (D. Kan. Mar. 27, 2015) ("Because the defendant-LLCs have members which are, in turn, LLCs, [the party alleging diversity] [is] required to allege the membership of those member-LLCs."). For diversity jurisdiction to exist, complete diversity must exist between the parties at the time the plaintiff filed the complaint. *Siloam Springs Hotel, L.L.C.*, 781 F.3d at 1239.

Plaintiff here is a Wisconsin corporation and its principal place of business is in New York. Doc. 1 at 3. Thus, to evaluate diversity jurisdiction, the court considers plaintiff a citizen of both Wisconsin and New York. *See* 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business . . . ."). Plaintiff's Complaint also alleges that defendant is a Kansas limited liability company with one member, Leavenworth SPE, Inc.—a Delaware corporation with its principal place of business in New Jersey. Doc. 1 at 3.

Defendant contends that plaintiff's Complaint is deficient because it does not identify Fort Leavenworth-Michaels Private, LLC as a member of defendant or plead the citizenship of Fort Leavenworth-Michaels Private, LLC's constituent members. Plaintiff does not dispute that

17

it omitted Fort Leavenworth-Michaels Private, LLC from the Complaint's jurisdictional allegations. But plaintiff asks the court to excuse the omission because it relied on defendant's 2015 annual report filed with the Kansas Secretary of State when it pleaded defendant's membership. In that report, defendant incorrectly listed Leavenworth SPE, Inc. as the only member holding at least five percent of its capital. *See* Doc. 13-1. Given this error, and as an alternative to dismissal, plaintiff asks for leave to amend its Complaint. Defendant responds that plaintiff, as a party to the Loan Documents, had actual knowledge of defendant's members before filing suit.

Because it fails to assert the citizenship of each member of defendant's LLC, plaintiff's Complaint fails to plead diversity jurisdiction adequately. But, because dismissal of this action would be without prejudice, *see Polaski v. Colo. Dep't of Transp.*, 198 F. App'x 684, 686 (10th Cir. 2006) ("[A] dismissal for lack of subject matter jurisdiction must be *without* prejudice."), the court grants plaintiff 14 days to cure this limited omission from the Complaint. *See JCM 082763, LLC v. Heinen Bros. Agra Servs., Inc.*, No. 12-1451-SAC, 2013 WL 2368327, at *2 (D. Kan. May 29, 2013) (granting plaintiff ten days to amend complaint to allege diversity of LLC members). If plaintiff fails to file an amended complaint that cures this jurisdictional omission within 14 days of the date of this Order, the court will dismiss this action without prejudice.

**IT IS THEREFORE ORDERED THAT** defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(7) (Doc. 7) is denied.

**IT IS FURTHER ORDERED THAT** because plaintiff's complaint fails to allege facts sufficient to support diversity jurisdiction, plaintiff is given 14 days from the date of this Order to file an amended complaint pleading subject matter jurisdiction properly. If plaintiff does not file an amended complaint within 14 days, the court will dismiss this action without prejudice.

**IT IS SO ORDERED.**

**Dated this 29th day of June, 2016, at Topeka, Kansas.**

>                           **s/ Daniel D. Crabtree**
>                           **Daniel D. Crabtree**
>                           **United States District Judge**